**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

SANDRA M. LYNCH,                    Chapter 13

                                    Case No. 20-15551 (CMG)

          Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

BRENNER, SPILLER & ARCHER
Kenneth Borger, Esq.
Attorney for Debtor

CUTOLO BARROS LLC
Joseph A. Kutschman, III, Esq.
Attorneys for Wyndham Place Condominium Association, Creditor

Albert Russo, Esq.
STANDING CHAPTER 13 TRUSTEE

**CHRISTINE M. GRAVELLE, U.S.B.J.**

**Introduction**

Debtor, Sandra M. Lynch ("Lynch") has proposed to modify the treatment of the claim of

Wyndham Place Condominium Association ("Wyndham") through her Chapter 13 bankruptcy

plan (the "Plan").  Wyndham filed a proof of claim for $16,209.54, classifying $12,992.94 of that

amount as secured, and listing the balance as unsecured.  The Plan provides for a cramdown[1] of the secured portion of Wyndham's claim to an amount equal to six months of customary condominium assessments, an amount which is entitled to priority over most superior liens pursuant to New Jersey state law.  *See* N.J.S.A. § 46:8B-21(b).  The remainder of Wyndham's claim is treated as unsecured through the Plan.  Wyndham has objected on the basis that the cramdown violates the anti-modification provision of the Bankruptcy Code.  *See* 11 U.S.C. § 1322(b)(2) (the "Anti-Modification Provision").

The crux of the issue is how condominium association liens ("Condo Liens") are classified under the Bankruptcy Code's statutory definitions, the answer to which affects the applicability of the Anti-Modification Provision to those liens.  Almost uniformly, a condominium association's master deed will have language that gives rise to a lien for customary condominium assessments. In addition, the New Jersey Condominium Association Act, N.J.S.A. § 46:8B-1, *et. seq.* (the "Condo Act") provides for the creation of a lien for unpaid and overdue customary condominium assessments.  The language of the Condo Act and the typical master deed are interrelated.  The Condo Act's authority explicitly derives from an association's master deed, which is the document through which the property becomes subject to the statute.  *See* N.J.S.A. § 46:8B-9(a).  The efficacy of a lien provided for in the master deed is almost entirely reliant upon the Condo Act to give it any practical effect.  Adding to the confusion, the language of the Condo Act and the master deed not only reference each other, but often track one another with regard to enforcement procedures.  While the liens can exist independent of one another, the true effect of a Condo Lien is achieved when the Condo Act and master deed are acting in concert.

---

[1] The term "cramdown" refers to the process under 11 U.S.C.S. § 1325(a)(5)(B)(i) whereby a chapter 13 plan may be confirmed without the consent of secured creditors.

Courts in this district have grappled with the co-dependent nature of Condo Liens. Initially, this Court held that a Condo Lien is a security interest, as defined under the Bankruptcy Code, consensually created through the master deed and bylaws. *See* In re Rones, 531 B.R. 526 (Bankr. D.N.J. 2015), *rev'd in part*, 551 B.R. 162 (D.N.J. 2016) ("Rones I"). But because the claim for a condominium charge is also partially secured by the Condo Act and not solely by the master deed, this Court found that the Anti-Modification Provision did not apply to Condo Liens. *See* Id. While the district court did not disturb the finding that a Condo Lien is a security interest, it did not agree that the statute provided additional security. Therefore, on appeal, the district court held the Condo Lien, as a lien on the principal residence secured solely by a security interest, is subject to the Anti-Modification Provision, making a cramdown impermissible. *See* In re Rones, 551 B.R. 162 (D.N.J. 2016) ("Rones II").

More recently, a number of my colleagues have held that the Condo Act creates a statutory lien in addition to the security interest created consensually through the master deed and bylaws. Because the Condo Lien claim is not secured only by a security interest but also by the liens created in the Condo Act, those courts have found that the Anti-Modification Provision is inapplicable. *See*, *e.g.*, In re Holmes, 603 B.R. 757 (D.N.J. 2019) ("Holmes III"); In re Keise, 564 B.R. 255, 263-64 (Bankr. D.N.J. 2017).

While I have, for a time, followed the recent line of cases finding that two liens secure unpaid fees due to a condominium association, upon further review I no longer accept that analysis. This Court reaffirms its original decision that a Condo Lien is a single, consensual lien and finds that Wyndham's claim is solely secured by a security interest in Lynch's principal residence. I do not come to this conclusion without doubt. As discussed in more detail later in this opinion, Wyndham's "rights" as modified by the Chapter 13 plan are distinguishable from those rights

provided for in a mortgage document.  *See* Nobelman v. Am. Sav. Bank, 508 U.S. 324 (1993)

(discusses in detail rights of mortgagees; rights of condominium association not addressed).

Nevertheless, it is without question that the Plan modifies Wyndham's rights.  The Anti-

Modification Provision applies, and Wyndham's claim may not be crammed down.  Wyndham's

objection to confirmation of the Plan is SUSTAINED, confirmation is DENIED, and the case will

be DISMISSED.

### Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended

October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (K), and (L).  Venue is proper in

this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the

following findings of fact and conclusions of law.

### Facts

The facts are straightforward and have not been contested.  Lynch purchased property

located at 80 Bradford Court, Aberdeen, New Jersey (the "Property") in August 2008.  The

Property is part of Wyndham and subject to its master deed (the "Master Deed").  This is reflected

in the unit deed giving title of the Property to Lynch (the "Unit Deed"), which describes the

Property as follows:

> BEING KNOWN AND DESIGNATED AS Unit 80 in Wyndham Place a
> Condominium which is substantially located in accordance with the
> location shown in a certain Master Deed dated August 18, 1983 and
> recorded in the Monmouth County Clerk's Office on August 24, 1983 in
> Book 4426, Page 922 and as amended in Deed Book 4445 at Page 116,

> further amended in Deed Book 4449 at Page 61, et seq., together with an
> undivided .2152 percentage interest in the common elements of Wyndham
> Place, a Condominium as forth in the Master Deed aforesaid as same may
> be lawfully amended from time to time pursuant to said Master Deed.

The Unit Deed also provides that the transfer of ownership is "[s]ubject to easements and
restrictions of record, zoning ordinances if any and such state of facts as an accurate survey would
disclose."

The Master Deed to which the Property is subject provides, at Section C, that Wyndham
shall be owned under the "Condominium concept" and shall be subject to the provisions of the
Master Deed, the Condo Act, and the restrictions, covenants, limitation and conditions set forth in
the Master Deed.  It further states at Section 23 that "the acquisition of title by any person to a unit
shall be conclusively deemed to mean that the acquirer appropriately adopts and ratifies the
provisions of [the Master Deed], the By-Laws and Rules and Regulations of the Association and
will comply therewith.  The covenants, agreements and restrictions set forth herein shall run with
the land and shall be binding upon [all future purchasers, owners and assigns]."

The Master Deed, at Section 14, creates a lien in favor of Wyndham, providing as follows:

> That all charges and expenses chargeable to any unit shall constitute a lien
> against said unit in favor of the Association, which lien shall be prior to all
> other liens except (1) assessments, liens and charges for taxes past due and
> unpaid on the unit and (2) payments due under bona fide mortgage
> instruments, if any, duly recorded.  The charges and expenses represented
> in the usual monthly maintenance charge shall become effective as a lien
> against each unit on the first day of each calendar year.  Additional or added
> assessments charges and expenses, if any, chargeable to units and not
> covered by the usual monthly maintenance charge, shall become effective
> as a lien against each unit as of the date when the expense or charge giving
> rise to such additional or added assessment was incurred by the Association.
> In the event that the assessment, charge or other expenses giving rise to said
> lien remains unpaid for more than ten (10) days after the same shall become
> due and payable, the lien may be recorded in accordance with the provisions
> of the N.J.S.A. 46:8B-1 and be foreclosed by the Association in the manner
> provided for the foreclosure and sale of real estate mortgages . . . The right
> of the Association to foreclose the lien shall be in addition to any other

> remedy which may be allowable to it at law or equity . . . including the right
> to proceed personally against any delinquent owner for the recovery of a
> personal judgment against him for the amount due, court costs, and
> reasonable attorneys' fees.

The Master Deed also contains language noting that unit owners, tenants and occupants are required to comply with the provisions of the Master Deed and By-laws (at Section 11); that owners automatically become members of Wyndham (at Section 8); and that owners are bound to pay a proportionate share of expenses and costs of Wyndham and may not exempt themselves by waiving use of the common elements or abandoning the unit (Section 13).

The language in both the Unit Deed and Master Deed speaks for itself. But it nonetheless must be noted that there is no explicit acknowledgment by Lynch that her ownership is subject to the Master Deed or the Condo Act. Lynch, as grantee of the Property, did not sign the Unit Deed, which includes the only reference to the Master Deed. Nor is there anything in the record whereby Lynch affirms through her signature or otherwise, that she understood or consented to ownership subject to the terms of the Master Deed or the Condo Act.

Lynch fell behind on payments, resulting in Wyndham recording a lien against the Property on December 22, 2017 in the amount of $8,226.34 (the "2017 Lien"). The recorded claim of lien document (the "Claim of Lien") states that "[n]otice is hereby given pursuant to N.J.S.A. 46:8B-21 that [Wyndham], has and claims a lien." The Claim of Lien refers to both the Master Deed and the Condo Act as the "Basis of Claim":

> The Unit Owner has not paid certain Common Area Maintenance fees
> levied by Lienor against the Unit . . . Unit Owners are bound by the Master
> Deed to pay, on a monthly basis, common expense assessments levied by
> Lienor against Unit. The Master Deed provides that Lienor may file a claim
> against the Unit if the Unit Owner fails to pay common expense
> assessments. In accordance with N.J.S.A. 46:8B-21, and pursuant to the
> Master Deed, Lienor may bring a foreclosure action to satisfy its lien if the
> sums set forth herein remain unpaid and shall be entitled to recover
> attorneys' fees and costs of suit.

The Claim of Lien further contains the following provision regarding the effectiveness of lien:

> The lien which is the subject hereof shall be effective from and after the time of recordation of this Claim of Lien. Pursuant to N.J.S.A. 46:8B-21, a suit to recover a money judgment for unpaid assessments may be maintained by Lienor without waiving the lien.

On May 24, 2019 Wyndham recorded a second lien in the amount of $4,726.60 against the Property (the "2019 Lien"). The Claim of Lien for the 2019 Lien contains language identical to the 2017 Lien, with the exception of the identification of the dates of non-payment and amounts due.

Lynch filed the present Chapter 13 bankruptcy on April 14, 2020. The petition and schedules list the value of the Property at $170,000. The filed claims evidence a first and second mortgage, the sum of which exceed the value of the Property. Neither the value of the Property, nor the validity of the mortgages has been contested. As noted, Wyndham filed a proof of claim listing secured and unsecured debt. The secured portion is the total of the 2017 and 2019 Liens. The balance of $3,216.60 is set forth as unsecured, despite the lien language contained in the Master Deed.

Lynch's original Chapter 13 plan was a "cure and maintain" plan, where she proposed to pay a $3,247.44 arrearage to Wyndham through the plan. That plan did not propose a cramdown of the Wyndham claim. Wyndham objected on the basis that it did not treat the secured claim in full.

Thereafter, Lynch filed the current Plan (the "Plan"). The Plan calls for payment of $1,200.00. Wyndham, an amount equal to approximately six months of customary condominium assessments, which is the minimum amount that would be entitled to priority pursuant to the Condo

Act. *See* N.J.S.A. § 46:8B-21(b)(1). The remaining amount due under Wyndham's claim is proposed to be crammed down and reclassified as unsecured. Wyndham objected to its treatment and the parties appeared for oral argument on the matter. After oral argument, the Court requested that the record be supplemented with any documentation through which Lynch acknowledged the terms of the Master Deed and/or the Condo Act, as well as the relevant portions of the Master Deed which subject it and/or Lynch to the provisions of the Condo Act. Wyndham docketed a filing in response to the Court's request on April 2, 2021, providing a copy of the Unit Deed, as well as additional portions of the Master Deed not previously included in the filings.

## **Legal Analysis**

The full text of the Anti-Modification Provision states that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).

It is not in controversy that Wyndham holds a secured claim. New Jersey state law provides that a Condo Lien recorded in accordance with the Act has "a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes." *See* N.J.S.A. § 46:8B-21(b). That priority is limited to "the aggregate customary condominium assessments against the unit owner for the six-month period prior to the recording of the lien." N.J.S.A. § 46:8B-21(b)(1). Because of this limited priority afforded by statute, a properly recorded Condo Lien is not wholly unsecured despite the existence of mortgages or other superior liens in excess of the value of the property.

But is Wyndham's secured claim secured only by a security interest in Lynch's principal residence, such that the Anti-Modification Provision would prevent its modification in the Plan?

The analysis of this issue makes application of the Anti-Modification Provision to Condo Liens difficult.

First, the Bankruptcy Code recognizes three types of liens: security interests, statutory liens, and judicial liens.  The legislative history of the Code (though not the language of the Code itself) makes clear that the "three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R. Rep. No. 595 at 312, as reprinted in 1978 U.S.C.C.A.N. 5963, 6269.  But the dual nature of most Condo Liens does not allow for a straightforward classification of such liens.   The classification issue is vital to the analysis of the Anti-Modification Provision. If a Condo Lien is not found to be a security interest, the Anti-Modification Provision does not apply.

Second, it is clear from the legislative history that the Anti-Modification Provision was intended to deal specifically with mortgages. In its <u>Nobelman</u> opinion, the Supreme Court explained the application of the Anti-Modification Provision by detailing the effect of a cramdown on the rights of mortgagees.  *See* <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324 (1993). There are numerous and significant distinctions between mortgages and Condo Liens that raise the question of whether the Anti-Modification Provision should be applied to Condo Liens.  To the extent that such cramdown does not modify any rights, it would appear that a bifurcation would be allowable. *See* 11 U.S.C. § 506(a).

     (i)    <u>Treatment of Condo Liens in the District of New Jersey</u>

The language of the Anti-Modification Provision limits its application to a "claim secured <u>only by a security interest in real property</u> that is the debtor's principal residence" (emphasis added).  A security interest is one of the three, mutually exclusive, categories of liens contained in the Bankruptcy Code.  Each category has its own definition under the Bankruptcy Code.  Because

a Condo Lien is given effect both through the Master Deed and the Condo Act, the definitions of statutory lien and security interest are relevant here.  A statutory lien is defined as a lien, "arising solely by force of a statute on specified circumstances or conditions ... but does not include a security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53).  A consensual lien is a lien or security interest that is created by consent or by agreement, such as a mortgage agreement. *See* U.S.C. § 101(51).

Relying on the mutual exclusivity of the categories of liens and after examining the language of the Bankruptcy Code, applicable caselaw, and history of the Condo Act, this Court previously looked at how and when the lien first arose, and concluded that, "[i]t is the act of purchasing the condominium unit, and voluntarily accepting and recording the unit deed, that gives rise to the lien . . . The fact that the Act provides a statutory priority lien for a portion of the claim does not change the character of the lien as a security interest."  Rones I, 531 B.R. at 533.  But Rones I concluded that the portion of the claim not entitled to statutory priority could be crammed down, reasoning that the priority treatment provided by the statute gave the Condo Lien added security in addition to a security interest in the principal residence.  Id. at 535-37.  While the district court in Rones II disagreed that any portion of the association's claim could be crammed down, it noted that "the parties have not appealed, and this Court will not disturb, the Bankruptcy Court's determination that the Association's Lien was a consensual lien and, therefore, a security interest." Rones II, 551 B.R. at 167.

After Rones II, courts in this district continued to wrestle with the dual nature of Condo Liens.  While a single lien must be characterized as either consensual, statutory, or judicial, courts began to examine whether multiple liens existed with respect to a Condo Lien claim.  The issue

was first raised by the district court on appeal of the denial of confirmation of a Chapter 13 plan,

wherein the debtor sought to cramdown a Condo Lien.  *See* In re Holmes, 579 B.R. 327 (D.N.J.

2016) ("Holmes I").   The Holmes I Court remanded the issue to the bankruptcy court for

consideration of whether the condo lien was statutory or consensual, noting that the "dueling

claims of exclusivity seem to reinforce the notion that the contractual and statutory liens, assuming

both are present, must be considered separately."  Holmes I, 579 B.R. at 333.

> Judge Kaplan expounded upon the concept of two independent liens in In re Keise:

> [T]his Court views the Association's claim as secured simultaneously by
> two separate liens—one consensual lien created by the Declaration, and one
> statutory lien created by the New Jersey Condominium Act—with each lien
> available to the Association to enforce its claim. Indeed, each lien offers
> both benefits and burdens with regard to creation, perfection and
> enforcement. By way of example, creation of a lien under the Act requires
> a detailed process of recording notices, not similarly necessary to enforce
> the lien created under the Declaration. Likewise, the Act grants a limited
> priority for the statutory lien, unavailable to the Association absent
> application of the Act.

> *      *      *      *      *

> [T]he Association cannot point to a single provision of the Act which
> requires that there be language in a master deed, or elsewhere, before the
> statutory lien can be effective.

In re Keise, 564 B.R. 255, 263-64 (Bankr. D.N.J. 2017), *rev'd and remanded on other grounds*,

No. 17-cv-1832, 2018 WL 624105 (D.N.J. Jan. 30, 2018) (Wolfson, J.).  Since In re Keise, other

courts have similarly found the existence of both a statutory and consensual lien.  *See* Holmes v.

Community Hills Condominium Ass'n, 603 B.R. 757 (D.N.J. 2019) (Holmes III); In re Smiley,

569 B.R. 377 (Bankr. D.N.J. 2017).  Another court has followed the analysis in Rones II that a

Condo Lien is a security interest which is not subject to modification.  *See* In re Spradley, No. 18-

CV-263 (PGS), 2019 WL 460224 (D.N.J. Feb. 6, 2019).  While Spradley was decided post-Keise

and post-<u>Smiley</u>, it did not address in any detail the idea that two simultaneous liens against the property could exist, so it does not add to this discussion.

Judge Gambardella, re-examining the nature of a Condo Lien in detail on remand, rejected the "dual lien" theory and found:

> [E]ven if subsection 46:8B–21(a) creates the lien, the question as to whether the lien is classified as statutory or consensual for purposes of the Bankruptcy Code depends upon when the lien first arose. <u>In re Rones</u>, 531 B.R. at 533; <u>In re Young</u>, 477 B.R. at 602; <u>In re Stern</u>, 44 B.R. at 19. Thus, the dispositive issue is not whether the Act creates a lien, but rather, whether the Act first created the lien. As previously noted, here the lien first arose by agreement when Debtor purchased the Property and agreed to the terms in the Master Deed. The statutory framework of the Act also supports the conclusion that the lien first arose by agreement. Pursuant to N.J.S.A. 46:8B–8, a condominium association is created and established by the recording of a master deed. Further, the Act requires that the master deed contain specific provisions in order to bring the association under the jurisdiction of the Act. N.J.S.A. 46:8B–9. These provisions, read together, establish that the recording of a master deed is a necessary prerequisite for the Act to apply. It follows that absent a master deed, an association can have no priority lien under N.J.S.A. 46:8B–21(a). <i>See</i> <u>In re Rones</u>, 531 B.R. at 533. Further, as noted by Judge Gravelle, "New Jersey case law presumes agreement to pay condominium fees when a deed to a unit is accepted." <u>Id</u>. at 532 (citing <u>Thanasoulis v. Winston Towers 200 Ass'n, Inc.</u>, 110 N.J. 650, 542 A.2d 900, 903 (1988)).
>
> The notion that a statutory lien and security interest can exist simultaneously conflicts with the plain language of the Bankruptcy Code and undermines the well-established principle that the categories of liens are mutually exclusive. This principle is not only derived from the legislative history, but rather is suggested by the definition of statutory lien itself. <u>In re Aikens</u>, 87 B.R. at 353 ("As the definition of 'statutory lien' expressly indicates, these classifications are mutually exclusive."). In this Court's view, Congress's clear intent was to create exclusive categories of liens.

<i>See</i> <u>In re Holmes</u>, 573 B.R. 549, 574 (Bankr. D.N.J. 2017) ("<u>Holmes II</u>").

In reversing <u>Holmes II</u>, the district court noted the point at issue, namely that the bankruptcy court rendered its decision relying on the legal tenet that the three categories of liens

are mutually exclusive.    While the district court accepted that the legislative history of the

Bankruptcy Code supported such a reading, it distinguished the issue by finding that:

> [T]here is no text or even legislative history suggesting that a single claim cannot be supported by more than one category of lien. Two liens—one statutory, and the other a security interest—can coexist and support the same claim without violating the principle that any particular lien must be one thing or the other. To say that a single claim may be supported by both a statutory lien and a separate consensual security interest is not to say that the two merge, or are the same thing.

Holmes III, 603 B.R. at 775.  The district court went on to address the bankruptcy court concern

that the Condo Act, and therefore the lien provided for in the Condo Act, are reliant on a master

deed, holding:

> I do not find that the statutory lien is legally dependent on the master deed for its vitality. A statutory lien under N.J. Stat. § 46:8B-21 has independent force. It arises as a matter of law, and does not depend on contract or consent for its existence.
>
> Here, a statutory lien under N.J. Stat. § 46:8B-21 arises because certain factual conditions are met (and the existence of a consensual security interest is disqualified as such a condition). Those conditions are the existence of an unpaid assessment and notice to the unit owner. If those facts are present, the lien becomes effective upon recordation. A lien under N.J. Stat. § 46:8B-21, then, does not depend on, refer to, or contemplate the existence of a master deed or other contractual document. Nor does the Condominium Act require that any such document, such as a master deed, contain its own lien-creating language. See N.J. Stat. § 46:8B-9.13 True, there is a requirement that a master deed contain "a statement submitting the land described in the master deed to the provisions of the Condominium Act." N.J. Stat. § 46:8B-9(a). But that general reference, to my way of thinking, stops far short of melding a consensual, master-deed-created lien (if the deed even contains such a provision) with the automatic statutory-lien provision of the Act.
>
> To look at it another way, a statutory lien could arise without any such language being present in the master deed, and conversely a security interest could arise contractually from the master deed without the aid of the statute. Under the Condominium Act, a statutorily-compliant master deed need not provide for the creation of a security interest at all. If it does not, the statutory lien does not therefore cease to operate; the statutory lien has an independent basis. Conversely, the inclusion of a consensual-lien provision

in the master deed should not affect the status of the statutory lien, either.
The two are simply distinct.

Holmes III, 603 B.R. at 775-76.

This Court agrees with some of the reasoning that supports the dual lien theory. For example, I agree that, theoretically, a lien arising under the Condo Act could exist absent lien language in the master deed. There is nothing in the Condo Act that requires a master deed to contain lien language. Similarly, if as here, the master deed contains language creating a Condo Lien, that lien exists without need for the Condo Act. But in the real world, without a master deed, the Condo Act would not apply, (*see* N.J.S.A. § 46:8B-8 and 8B-9(a)), and the associations created by a master deed generally use the collection and enforcement procedures established in the Condo Act. Not only does the plain language of the Claim of Lien evidence a single lien, the act of recording the lien merges the liens created in the Master Deed and the Condo Act.

(ii)     The Plain Language of the Claim of Lien Does Not Support the Dual Lien Theory

Before turning to this Court's analysis of the dual lien theory, a point of clarification is necessary. Condominium assessments are an ongoing obligation, continuing against the unit so long as the property remains a part of a condominium association. The Condo Act establishes the procedure for recording a claim of lien to denote those unpaid obligations. There may be multiple claims of lien filed pursuant to the Condo Act as new assessments come due and are not paid. That is the case here, where Wyndham's secured claim is comprised of two Claims of Lien evidencing unpaid fees that accumulated during different periods of time. The obligations outlined in the 2017 Lien and the 2019 Lien do not overlap. Each secures a separate and distinct portion of Lynch's obligation to pay past due assessments. The discussion regarding the dual lien theory relates to whether it is possible for simultaneous liens to exist as to the same obligation. So, while there may be multiple claims of lien filed against a condominium unit due to different obligations, that is not

the issue presented in the dual lien theory.   The dual lien theory holds that multiple liens may exist as to the <u>same</u> claim of lien.

While the dual lien theory is straightforward conceptually, that the obligation is secured by both a consensual lien created in the master deed and a statutory lien created by the Condo Act, its practical application where there is lien language in both a master deed and the Condo Act presents more complexities, particularly after a claim of lien has been recorded.   Based upon the facts of this case, this Court cannot find that the recorded Claim of Lien, evidencing a single obligation for unpaid assessments, can be characterized as two independent liens.   The Bankruptcy Code and accompanying legislative history compel a finding that Wyndham's lien must be characterized as a single, consensual lien.   The Master Deed explicitly provides that where a lien remains unpaid "the lien may be recorded in accordance with the provisions of [the Condo Act]."    So, when Wyndham recorded the Claim of Lien in accordance with the Condo Act, it was also recorded in accordance with the Master Deed.   This is evidenced in the Claim of Lien itself, which expressly states that the basis for the claim is the Master Deed.   But the Claim of Lien also states that "[t]he lien which is the subject hereof shall be effective from and after the time of recordation of this Claim of Lien."    This language tracks the timing in the Condo Act, where the lien arises upon recordation, and not in the Master Deed, where the lien arises on the first day of each year without further action.   The Claim of Lien speaks to both the statutory and consensual bases.

(iii)    <u>The Claim of Lien Merges the Liens Referenced in the Condo Act and the Master Deed</u>

The <u>Keise</u> decision highlights the differences between the rights and responsibilities of those liens arising under the Condo Act versus those liens arising under a master deed.   These distinctions can be illustrated in the case at bar.   For instance, the Master Deed provides that its lien becomes effective "on the first day of each calendar year."   The lien arises whether or not

there are unpaid, overdue assessments.  In comparison, the Condo Act allows for the recording of

a claim of lien only for assessments that are overdue and unpaid.  The Condo Act has the added

requirement of notice, providing the association with a lien "upon proper notice to the appropriate

unit owner, together with interest thereon and any late fees, fines, expenses, and reasonable

attorney's fees imposed or incurred in the collection of the unpaid assessment." N.J.S.A. § 46:8B-

21.  Further, the lien arising out of the Condo Act is only effective "from and after the time of

recording in the public records of the county in which the unit is located of a claim of lien stating

the description of the unit, the name of the record owner, the amount due and the date when due."

Id.  There is no such requirement in the Master Deed.

In addition, there are differing rights and responsibilities present with regards to

enforcement of the liens.  The Condo Act requires that the statutorily-created limited priority

afforded to a Condo Lien must be renewed, or it will expire.  *See* N.J.S.A. § 46:8B-21(b)(1) & (4).

Wyndham's Master Deed provides the benefit of payment of unpaid assessments and charges from

the proceeds of the sale when title is transferred (at Section 13).  This is a collection method not

contemplated in the Condo Act.  Also, the differing rights are still applicable to any unpaid

amounts on a going forward basis after a lien is recorded.  This is seen in the present matter, where

Wyndham's proof of claim acknowledges $3,216.60 in fees subsequent to the 2019 Lien.  So, in

the hypothetical event that Lynch chose to sell her house, Wyndham would be entitled to collect

$16,209.54 from the proceeds of sale, not merely the $12,992.94 encompassed by the recorded

2017 Lien and the 2019 Lien.

Despite the existence of these differing rights and responsibilities, this Court cannot agree

with Holmes III that "to say that a single claim may be supported by both a statutory lien and a

separate consensual security interest is not to say that the two merge, or are the same thing."

Holmes III, 603 B.R. at 775.  This Court finds that once the Claim of Lien was recorded, the two liens, the one referenced in the Master Deed and the second referenced in the Condo Act, merged into a single lien.  The Claim of Lien is a single, recorded document that derives from both the Master Deed and the Condo Act.  In fact, according to Wyndham's proof of claim, its secured claim is evidenced by the 2017 Lien and the 2019 Lien and is equal to the total of those liens.  Wyndham does not rely on a lien created in the Master Deed and on a lien created in the Condo Act, it relies on the filed Claim of Lien that references both.

Yet, there is only one recorded document for both the 2017 Lien and the 2019 Lien.  While in theory these Claims of Lien could exist solely based upon the Condo Act, that is not the factual scenario before the Court.  Although there may be two independent bases for the imposition of a lien, there is only one document on record which is based upon the same obligation for the same unpaid assessments.

Once the Claim of Lien was recorded pursuant to both the Master Deed and the Condo Act, the different rights and responsibilities of each lien as to creation and perfection, as discussed in Keise, became irrelevant.  The obligation may have arisen from different sources, and those sources may have had different requirements to create and enforce the lien, but it is now being recorded through a method ratified by both of those sources.  There is a single, recorded Claim of Lien at that time.  The fact that Wyndham had a choice as to different methods of collection, does not create two different liens, although its chosen method of collection may result in two different liens.

The Keise decision supports this conclusion.  Keise discusses a scenario where multiple liens could exist as to the same claim citing the provision in the Condo Act that permits prosecution of a suit to recover a money judgment without waiving the lien.  See N.J.S.A. § 46:8B-21(f). The

Master Deed here similarly allows for such treatment.  Thus, an association may pursue an *in personam* judgment, resulting in a judgment lien, which would be a second lien claim on the same amounts due.  This was the factual scenario presented to Judge Sherwood when he held that the Anti-Modification Clause was not applicable where the condominium association obtained a judgment.  *See* In re Guice, 2019 Bankr. LEXIS 634 (Bankr. D.N.J. 2019) (judicial lien provided security in addition to the principal residence).  A judgment lien is an independent filing demonstrating an independent lien, which could be pursued separately against the debtor's personalty or other real property.  Additionally, the ability to pursue an *in personam* judgment is not a benefit of the lien created by the Condo Act.  Rather, it is a benefit created by the statute <u>in addition to</u> the lien.

It is too abstract for this Court to accept that the single, recorded Claim of Lien document evidencing a portion of an amount due is, in actuality, two completely independent liens.  For these reasons, I must respectfully disagree with those courts finding the existence of two liens.

(iv)     <u>There is a Consensual Component to Application of the Condo Act that Lends Additional Support to the Existence of a Single Consensual Lien</u>

The Court notes that the Claim of Lien itself, which is dictated by statute, is partially reliant upon the consent of the property owner, and therefore cannot be characterized as a statutory lien. In accepting the Unit Deed, Lynch consented to the Master Deed, which references the Condo Act. In consenting to the Master Deed, Lynch also consented to application of the Condo Act.

In <u>Rones I,</u> this Court found a Condo Lien to be a security interest first created through the consensual act of accepting and recording a unit deed, through which a unit owner submits to the provisions of the master deed and bylaws.  Here, the Master Deed not only created a lien, but also acknowledged that the lien may be recorded under the provisions of the Condo Act.  The Master

Deed expressly subjected the unit owners to the provisions of the Condo Act.  This consensual acceptance challenges any conclusion that liens created in the Condo Act are statutory.

The Supreme Court of New Jersey has held that a purchaser of property that is part of a community association consents to the provisions of the master deed and bylaws.  *See* Highland Lakes Country Club & Community Ass'n v. Franzino, 186 N.J. 99, 114 (2006) (act of purchasing home subjects purchaser to covenants of master deed and bylaws).  The Highland Lakes case involved a homeowner's association, not a condo association.  Homeowner's associations, unlike condo associations, are not subject to statute.  Nevertheless, both types of home ownership include membership in a common-interest community that subjects owners to the covenants set forth in community deeds (or master deeds) and bylaws of record.  *See* id. at 104 (master deed, subsequent deeds used to transfer individual titles, and bylaws require membership of all owners).

The Condo Act applies, by its express terms, only to those associations created by a master deed.  It follows that the master deed must exist before the Condo Act can apply.  Therefore, a condominium association, like a homeowner's association, originates through a master deed and the Highland Lakes opinion is instructive here.

The Highland Lakes Court considered whether the homeowner's association could compel a current owner to pay arrears attributable to prior owners.  *See* Highland Lakes, 186 N.J. at 103.  In answering the question in the affirmative, the Court held that the recorded covenants in the community's deeds and bylaws  provided owners with notice that they would be responsible for arrears and that their property would be encumbered by an equitable servitude for those arrears.  *See* id. at 111 (obligations contained in recorded bylaws are enforceable as contractual obligations and can create liens on property).  Quoting the trial court in a similar case, the Highland Lakes Court noted that the property owner is charged "with knowledge of, and is bound by, the

membership covenants … by constructive knowledge of recorded documents which are in [the] chain of title." *See* id. at 120.

Here, Lynch must be charged with knowledge of the covenants contained in the Master Deed. Those covenants include references to the Condo Act. By purchasing her unit, Lynch consensually subjected herself to the provisions of the Master Deed and the Condo Act.

The Holmes III decision ignores this consensual component. Holmes III states that a lien under the Condo Act does not depend on contract or consent. It bases that conclusion, in part, on the statement that such a lien "does not depend on, refer to, or contemplate the existence of a master deed or other contractual document." Holmes III 603 B.R. at 775. But the entirety of the Condo Act is reliant on the existence of a master deed, including those provisions creating a lien. This is referenced in Holmes II, which sites to N.J.S.A. § 46:8B-9(a), a statute providing that the land is submitted to the provisions of the Condo Act pursuant to the master deed. The district court in Holmes III found that "that general reference … stops far short of melding a consensual, master-deed-created lien (if the deed even contains such a provision) with the automatic statutory-lien provision of the Act." Holmes III, 603 B.R. at 776. This analysis focuses on the relationship between the lien language of the Condo Act and the lien language in a master deed and whether those liens are melded. The true focus should be on the relationship between the master deed and the statute, regardless of any lien language in the master deed. The Condo Act has no efficacy without a master deed.

The master deed, in turn, is reliant upon ratification of its terms by the unit owners. This is demonstrated by the additional language in the Condo Act which provides that "'Master deed' means the master deed recorded under the terms of section 8 of this act, as such master deed may be amended or supplemented from time to time, being the instrument by which the owner in fee

simple or lessee of the property submits it to the provisions of this chapter." N.J.S.A. § 46:8B-3(m) (emphasis added). It is therefore not only the land that is subjected to the Condo Act through the Master Deed, but also the unit owner, who acknowledges and consents to as much.

In the same way that the unit owner consents to the lien arising under the master deed, she is also consenting to the provisions of the Condo Act, including the imposition of a lien under that statute, regardless of whether or not any lien language exists in the master deed. In addition to the fact that there is a consensual component to application of the Condo Act and the lien created therein, Wyndham's Master Deed also creates a lien. Therefore, by Bankruptcy Code definition, a Condo Lien cannot be statutory, because it does not arise solely by statute. The Claim of Lien must be characterized as a security interest.

      (v)    Lynch's Chapter 13 Plan Modifies the Rights of Wyndham Making the Anti-Modification Provision Applicable

The Anti-Modification Provision applies here only if the Court finds that the Plan modifies the rights of Wyndham. The Supreme Court discussed modification of rights when it held that the Anti-Modification Provision controls over section 506(a) of the Bankruptcy Code and prohibits bifurcation of a claim secured only by a security interest in real property that is the debtor's principal residence. *See* Nobelman v. Am. Sav. Bank, 508 U.S. 324, 332 (1993). Section 506(a) provides for bifurcation (or cramdown), which allows debtors to modify secured claims by limiting the secured portion of the claim to the value of the collateral when the value of the collateral is less than the secured portion. *See* 11 U.S.C. § 506(a)(1). Bifurcation is available to Chapter 13 debtors. *See* 11 U.S.C § 103(a); Nobelman, 508 U.S. at 328 n. 3 (1993).

In Nobelman, the Supreme Court reasoned that the Anti-Modification Provision prohibits reliance on section 506(a) because it focuses on the rights of a holder of a secured claim through a Chapter 13 plan, not the modification of the claim itself. *See* Nobelman, 508 U.S. at 328.

Therefore, even if only a portion of the creditor's claim was secured, the language of the Anti-Modification Provision prevented any modification of that creditor's rights.   The Bankruptcy Code does not define the term "rights."   The determination of rights and property interests is generally left to state law.  Id. at 329 (citing to Butner v. United States, 440 U.S. 48, 54-55 (1979)). The Nobelman Court found that pursuant to Texas law, the creditor's rights were reflected in the relevant mortgage instruments.  Id.  These rights included "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure."  Id.  In cramming down a claim, a debtor would modify those bargained-for rights, which are protected by the Anti-Modification Provision, and for that reason, cramdown is not permissible.  Id. at 329-330.

The Nobelman Court's analysis of "rights" concentrated exclusively on mortgage instruments.  Justice Thomas highlighted the impossibility of modifying a mortgage principal to the fair market value of the collateral, while not modifying the creditor's rights as to interest rates, payment, amounts, and other contractual terms.  Id. at 331.  He found:

> The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components. Petitioners cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal to $23,500, the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right. Furthermore, the bank holds an adjustable rate mortgage, and the principal and interest payments on the loan must be recalculated with each adjustment in the interest rate. There is nothing in the mortgage contract or the Code that suggests any basis for recalculating the amortization schedule—whether by reference to the face value of the remaining principal or by reference to the unamortized value of the collateral. This conundrum

> alone indicates that § 1322(b)(2) cannot operate in combination with § 506(a) in the manner theorized by petitioners.

Id. at 331-32. The Nobelman Court continued, "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." Nobelman, 508 U.S. at 332 (Stevens, J., concurring). The Legislative history of the Anti-Modification Provision is in accord. In fact, the Senate committee report explaining section 1322 explicitly states that "Subsection (b) permits a chapter 13 plan to . . . (2) modify the rights of holders of secured and unsecured claims, except claims wholly secured by real estate mortgages . . ." S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978), U.S. Code Cong. & Admin. News, p. 5927 (emphasis added).

The sole focus of the Supreme Court in Nobelman and of Congress when it enacted the Anti-Modification Provision was its effect on mortgages. Condo Liens are not addressed. The master deeds giving rise to Condo Liens are very distinct instruments. A mortgage is a bargained-for agreement between two parties that is signed and acknowledged by the mortgagor. It is for a sum certain, over a set period of time, with provisions setting forth interest rates, amortization schedules, and events of default, among many other terms. A master deed is not a bargained-for agreement, but rather it is an instrument to which the owner subjects herself through the acceptance of the unit deed. There is no signed document or acknowledgment consenting to the terms of the master deed. Additionally, as is the case here, the Master Deed creates a lien that arises at the beginning of each calendar year for that year only. The amount accrues as the non-payment by a unit owner continues, there is no set amount to be paid over a set period of time. There is no "end date," but rather the obligations continue in perpetuity so long as the unit is a part of the association. Finally, it is difficult to see how allowing modification of the rights of condominium associations could affect the flow of capital into the home lending market.

These distinctions between a mortgage instrument and a master deed may provide the basis for allowing bifurcation of a Condo Lien and a finding that the Anti-Modification Provision is not applicable.  There is a fair argument that in reducing a Condo Lien to its statutorily defined secured amount equal to a six-month assessment, and then paying that amount under a Chapter 13 plan, a debtor is not adjusting any bargained-for rights regarding the length of the obligation, monthly payments, interest or amortization.  The plan simply acknowledges and pays the secured claim as of the date of the petition.  The post-petition rights and obligations continue unabated.  Certain other rights are affected by the bankruptcy filing, but not by the Chapter 13 plan itself.  For instance, the Master Deed contains a provision allowing Wyndham to proceed against Lynch personally for any outstanding amounts due.  That right is not affected by Lynch's plan, but rather by other provisions of the Bankruptcy Code, specifically the automatic stay and the discharge injunction.  *See* 11 U.S.C. §§ 362 and 524, respectively.  As noted in <u>Nobelman</u>, "these statutory limitations on the lender's rights, however, are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition."  <u>Nobelman</u>, 508 U.S. at 330.

Nevertheless, it is not possible for this Court to make the leap to a finding that <u>no</u> rights of Wyndham are affected by the Plan.  The most obvious of these rights is the right to pursue a state court foreclosure and sale.  Additionally, the Master Deed here provides that a purchaser of a unit "shall be jointly and severally liable with his predecessor in title thereto for the amounts owing by the latter to the Association up to the time of the transfer of title."  This is the case whether or not a lien is recorded pursuant to the Condo Act.  If Lynch is able to be relieved of her obligation through a cramdown, then Wyndham is deprived of a valuable collection right provided for in the agreement to which Lynch consented when she took title to the Property.  For these reasons, the

Court finds that the Plan modifies the rights of Wyndham and the Anti-Modification Provision
applies.

(v)    <u>Policy Considerations Support Both the Consensual Lien and Dual Lien Theories</u>

Finally, the competing interests of the debtor in obtaining a fresh start and of the
condominium association in preserving its ability to collect fees add to the difficulties in applying
the Anti-Modification Provision. The Court recognizes that this decision will negatively affect the
ability of many debtors to reorganize in Chapter 13. Debtors in this Court will be unable to
cramdown Condo Liens, will be required to provide payment in full for all unpaid condominium
fees and, as a result, may not be able to propose a feasible plan. Unsuccessful Chapter 13
reorganizations often result in a mortgage foreclosure. This result is contrary to the primary
purpose of the Bankruptcy Code, which is to provide debtors with a fresh start. Adherence to the
dual lien theory supports the fresh start.

The outcome is no different than where a debtor's property is encumbered by a second
mortgage secured by a sliver of equity. In such a scenario the applicability of the Anti-
Modification Provision is unquestioned, despite the negative effect on the debtor's fresh start. The
distinction here is twofold. First, as discussed above, the Anti-Modification Provision did not
appear to contemplate Condo Liens. Second, the limited priority afforded by the Condo Act
ensures that the Condo Lien will be secured, regardless of any further equity analysis on the
affected property. Nothing has been presented that indicates that the priority afforded in the Condo
Act by the New Jersey State Legislature was related in any way to an association's rights in a
bankruptcy filing.

But there are public policy considerations in favor of Wyndham's position. Condominium
associations rely on the collection of fees and assessments from every unit owner to support the

entire community.  One owner's failure to pay increases the burden on others.  If fees go unpaid, common areas cannot be maintained, property values decrease, and the community suffers.  A condominium association does not have the luxury of choosing its residents.  Whereas a mortgagor has the ability to assess the credit-worthiness of an applicant and reject an application or craft an agreement based upon risk factors, a condominium association is constrained to collect from whomever has purchased a unit within its confines.  In establishing lien recording and collection procedures, the Condo Act acknowledges the importance of the payment of fees and assessments.  So too does each master deed, which creates the obligation to pay.  The single lien theory advanced in this decision protects the ability of condominium associations to enforce liens and collect fees, thereby protecting the interests of all members of the community.

## Conclusion

Ultimately, with some reservation, this Court must find that the facts of this case demonstrate that the sole security to Wyndham's claim is provided by the 2017 and 2019 Liens.  Because those liens must be categorized as security interests, the Anti-Modification Provision is implicated.  The language of the statute expressly applies to claims "secured" solely by a security interest, not claims solely "based upon" or "provided for" by a security interest.  This Court is constrained to apply the statute as written.

I cannot help but feel as though this opinion is a case of fitting a square peg into a round hole.  The dual nature of a Condo Lien in New Jersey is near impossible to reconcile with the legislative history of the Bankruptcy Code demanding that a lien be classified as only one type.  Additionally, it is clear that the Anti-Modification Provision primarily contemplated the treatment of mortgages, as evidenced through its own legislative history as well as the analysis in Nobelman.

It is simply not set up to provide for the situation at bar, where a lien sounding in statute and agreement is provided a limited priority through statute, giving it a secured position that would not otherwise exist.

It will be left to the New Jersey legislature, Congress, or a higher court to round the peg or square the hole and decide which interests are to be protected.  For now, based on the facts presented to it, this Court holds that the cramdown provisions of the Plan violate the Anti-Modification Provision of the Code.  Consequently, confirmation is denied.  The case will be dismissed.

Dated: June 24, 2021                              /s/Christine M. Gravelle_____
                                                  United States Bankruptcy Judge